LATHAM & WATKINS LLP
  Perry J. Viscounty (Bar No. 132143)
    *perry.viscounty@lw.com*
650 Town Center Drive, 20th Floor
Costa Mesa, CA  92626-1925
(714) 540-1235

LATHAM & WATKINS LLP
  Jennifer L. Barry (Bar No. 228066)
    *jennifer.barry@lw.com*
  Patrick C. Justman (Bar No. 281324)
    *patrick.justman@lw.com*
  Adam A. Herrera (Bar No. 328043)
    *adam.herrera@lw.com*
12670 High Bluff Drive
San Diego, CA  92130
(858) 523-5400

Attorneys for Plaintiff
ENTREPRENEUR MEDIA, LLC

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ENTREPRENEUR MEDIA, LLC, a Delaware limited liability company, | CASE NO. 24-cv-2064 |
| Plaintiff, | **Complaint For:** |
| v. | **(1)** **Trademark Infringement (Lanham Act, 15 U.S.C. § 1114)** |
| ENTREPRENEUR FIRST (USA) OPERATIONS, LLC, a Delaware limited liability company; ENTREPRENEUR FIRST OPERATIONS LIMITED, a United Kingdom private limited company; and DOES 1-10, | **(2)** **Unfair Competition/False Designation of Origin (Lanham Act, 15 U.S.C. § 1125(a))** |
| | **(3)** **Common Law Trademark Infringement** |
| Defendants. | **(4)** **Common Law Unfair Competition** |
| | **DEMAND FOR JURY TRIAL** |

**COMPLAINT**

**NATURE OF ACTION**

1.      Plaintiff Entrepreneur Media, LLC ("EM") brings this Complaint against Entrepreneur First (USA) Operations, LLC ("EF (USA)"), Entrepreneur First Operations Limited ("EFOL"), and Does 1-10 for (i) federal trademark infringement and false designation of origin, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq*. and (ii) common law trademark infringement and unfair competition under California law.  EM alleges, with knowledge concerning its own acts and on information and belief as to all other matters (unless otherwise specifically stated), as follows:

**THE PARTIES**

2.      EM is a Delaware limited liability company with its principal place of business at 1651 East 4th Street, #125, Santa Ana, California 92701.

3.      Defendant EF (USA) is a Delaware limited liability company, with a primary place of business at 33 West 17th Street, 5th Floor, New York, New York 10011.  EF (USA) conducts business and provides goods and services throughout the United States, including California and in this District, under the ENTREPRENEUR FIRST mark.

4.      Defendant EFOL is a United Kingdom private limited company, with a primary place of business at Senna Building, WeWork, Gorsuch Pl, London E2 8JF, United Kingdom.  EFOL conducts business and provides goods and services throughout the United States, including California and in this District, under the ENTREPRENEUR FIRST mark.

5.      Does 1-10 are persons or entities responsible in whole or in part for the wrongdoing alleged in the Complaint ("Doe Defendants").  Each of the Doe Defendants participated in, ratified, endorsed, and/or was otherwise involved in the acts complained of, and they have liability for such acts.  EM will amend this

1  Complaint if and when the identities of such persons or entities and/or the scope of
2  their actions become known.

3      6.      At all relevant times, EF (USA) and EFOL (collectively,
4  "Defendants") acted as the principal, agent, and/or representatives of each of the
5  other Defendants.  Any action by one of the Defendants was in the course and
6  scope of the agency relationship between the Defendants and was with the
7  permission, ratification, and/or authorization of each of the other Defendants.

8      7.      Defendants have conducted business throughout the United States,
9  including California and in this District, using the ENTREPRENEUR FIRST
10 mark.

11     8.      As fully detailed below, Defendants have used the ENTREPRENEUR
12 FIRST mark (alternatively referred to as the "Infringing Mark") in a manner that
13 violates EM's longstanding and strong rights in the ENTREPRENEUR® mark.

14                        **JURISDICTION AND VENUE**

15     9.      Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court
16 has subject matter jurisdiction over EM's claims for relief for violation of the
17 Lanham Act.  Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental
18 jurisdiction over EM's state law claims because they are joined with substantial
19 and related claims under the Lanham Act.  This Court also has supplemental
20 jurisdiction over EM's state law claims pursuant to 28 U.S.C. § 1367(a) because all
21 of EM's claims arise out of a common nucleus of operative facts.

22     10.     This Court has personal jurisdiction over Defendants because
23 Defendants have: (a) conducted substantial business in the State of California and
24 this District by advertising, targeting, offering, selling, and providing their
25 goods/services to residents of this District; (b) derived financial benefits from
26 residents of the State of California by doing so; (c) purposefully availed
27 themselves of the privilege of conducting business in the State of California; and
28 (d) sought the protection and benefits of the laws of the State of California.  In

1 │ addition, the causes of action arise from the Defendants' activities within and

2 │ actions targeted at the State of California.

3 │      11.    Moreover, in a recent blog post from January 26, 2024, Defendants

4 │ boasted that they are "**establishing a permanent presence** in San Francisco,

5 │ launching [their] new hub in South Park" in February 2024.  Defendants also stated

6 │ that "[f]rom now on, startups across [their] global sites will be invited to relocate to

7 │ San Francisco after funding from [their] Investment Committee" and "[t]hese

8 │ startups will have the opportunity to continue their journey . . . in San Francisco,

9 │ growing what they've built into an early stage company while gaining access to the

10 │ world's most important startup ecosystem," as shown below:



Launching our new hub in San Francisco

Posted 26 January 2024

By Alice Bentinck
Cofounder and CEO

We're establishing a permanent presence in San Francisco, launching our new hub in South Park next month.

From now on, startups across our global sites will be invited to relocate to San Francisco after funding from our Investment Committee. These startups will have the opportunity to continue their journey (the 'Launch' part of our product) in San Francisco, growing what they've built into an early stage company while gaining access to the world's most important startup ecosystem.

21 │ (*www.joinef.com/posts/launching-our-new-hub-in-san-francisco/*)

22 │      12.    Thus, this Court also has personal jurisdiction over Defendants

23 │ because Defendants target their goods and services to the State of California by,

24 │ among other things, "establishing a permanent presence" in California, targeting

25 │ residents of California as consumers, and otherwise offering products and services

26 │ under the ENTREPRENEUR FIRST mark to residents of California.

27 │      13.    Venue in this Court exists under 28 U.S.C. § 1391(b)(2), inasmuch as

28 │ a substantial part of the events giving rise to EM's claims occurred in this District.

Indeed, as noted above, Defendants have "establish[ed] a permanent presence in San Francisco."

14.    Pursuant to Civil Local Rule 3-2(c), this action may be assigned on a district-wide basis because it involves intellectual property rights.

### FACTS COMMON TO ALL CLAIMS FOR RELIEF
### EM and Its Successful ENTREPRENEUR® Brand

15.    For over forty years, EM (together with its predecessor companies) has published magazines and books, which provide editorial content and other information, as well as offered products and services related, or of interest, to businesses, business owners, and prospective business owners.

16.    EM's longstanding marketing and sales efforts have been conducted primarily under the mark ENTREPRENEUR® (the "ENTREPRENEUR Mark").

17.    EM is the publisher of ENTREPRENEUR® magazine and other publications incorporating the ENTREPRENEUR name in their titles. ENTREPRENEUR® magazine is published six times per year with a current print and digital paid circulation, including both subscriptions and single-copy sales, of more than 400,000 copies in the United States and worldwide.

18.    ENTREPRENEUR® magazine routinely features articles about and interviews with some of the biggest names in the business and entertainment community, as shown here:





LATHAM & WATKINS LLP
ATTORNEYS AT LAW

COMPLAINT
DEMAND FOR JURY TRIAL

19.     ENTREPRENEUR® magazine also annually publishes, and has continuously published for over thirty years, the highly anticipated Franchise 500® ranking of America's top franchises using EM's top-secret formula:



20.     EM also publishes and distributes in the United States and worldwide over 120 book titles under the ENTREPRENEUR Mark and ENTREPRENEUR PRESS® imprint, and with over 2.5 million books sold, including translations in multiple languages throughout the world:



21.     EM also conducts seminars, webinars, workshops, and other educational programs geared towards teaching others to successfully start and operate businesses.  In one such program, EM has created, and for the last several years offered and sponsored, an exclusive online subscription program under the ENTREPRENEUR LEADERSHIP NETWORK® brand, whereby selected industry experts provide their advice, ideas and other content to help educate EM's millions of website visitors—both existing and potential business owners and entrepreneurs.  Over the years, EM has also sponsored events, which have included: (i) the *Entrepreneur® Masters & Mentors* seminar series sponsored by

1   Cathay Pacific and Nissan, (ii) *Entrepreneur® Magazine's GrowthCon* conference

2   sponsored by Canon USA, and (iii) the *Entrepreneur 360™*, a conference

3   sponsored by The Lincoln Motor Company, Canon USA, AXA Financial, and

4   American Airlines.

5       22.    In addition to its website at *entrepreneur.com*, which it has owned and

6   operated continuously since 2002, EM also disseminates and markets its content

7   and services through its mobile apps, and its various social media channels on such

8   platforms as Facebook®, YouTube®, Instagram®, and LinkedIn®, and with a total

9   of over 15 million followers.

10      23.    The website at *entrepreneur.com* has recently averaged more than 5.9

11  million unique users and more than 8.9 million page views per month.

12      24.    EM has also launched apps for iPhones/ iPads and Android:

13
14
15  
16

17      25.    EM produces and offers a variety of podcasts, on its website at

18  *entrepreneur.com*, and also distributed under the ENTREPRENEUR Mark on

19  Spotify and Apple Podcast, as well as other outlets:

20
21
22
23  
24
25
26

27      26.    EM's fame and high-quality content and services have resulted in

28  numerous co-branding business relationships with some of the top names in news

and business.  These co-branding relationships include: (i) annual rankings of top undergraduate and graduate colleges for entrepreneurship by The Princeton Review; (ii) webinars on topics such as leadership, starting and running a business, and marketing and social media, sponsored by such well-known companies as Comcast Business and Oracle NetSuite®; and (iii) videos presented by business leaders, such as the co-founder of Netflix® and the president and owner of In-N-Out Burger.  EM's past co-branding relationships have included: (i) contests sponsored by General Motors and Canon USA; (ii) content provided and branded by CNBC, Reuters, NFL Players Association, and Business Insider; and (iii) Great Place to Work® (annual Best Small & Medium Workplaces rankings).

27.     Most recently, EM has partnered with Yelp® to create AMERICA'S FAVORITE MOM & POP SHOPS™, an annual listing and ranking of 150 of America's most popular independently owned and operated small businesses throughout the U.S.  EM has also partnered with Yelp® since 2020 to create a series of podcasts entitled ***Behind the Review***, featuring conversations with business owners and reviewers about how small businesses can best respond to the needs and expectations of their customers.  In addition, EM has: (i) partnered with Steve Case's *Rise of the Rest*™, a nationwide program to promote entrepreneurship in start-up ecosystems in middle America; (ii) hosted a contest with Canon USA under the rubric *Project Grow Challenge*, in which businesses were awarded money based on how they proposed to grow their businesses through increased productivity and consumer awareness; and (iii) partnered with Chivas Brothers Limited as its exclusive media content partner, in connection with and support of Chivas' annual event known as *The Venture*, a worldwide competition to discover, celebrate, and award with investment dollars extraordinary startup businesses creating positive social change.

28.     Through careful cultivation of its various products and services, EM has developed an outstanding reputation as an innovator in the field of business start-ups and strategy and has established an extremely loyal customer following.

29.     EM has received a tremendous amount of public recognition and acclaim for the products sold and services provided under its ENTREPRENEUR Mark.  Through EM's widespread and continuous use of the ENTREPRENEUR Mark, it has acquired extensive goodwill, developed a high degree of distinctiveness, and become famous, well known, and recognized as identifying goods and services that originate from EM.

30.     The fame and quality of the products and services bearing the ENTREPRENEUR Mark have been widely recognized through industry awards and commendations.  For example, *ENTREPRENEUR* magazine was rated #1 among the top twelve "Most Relevant Business Magazines for Entrepreneurs in 2023" by Altar.io, and was a finalist in two categories in the 2018 Folio Digital Awards for "Best Website Relaunch" and "Best User Experience."  Additionally, two of EM's editor-led podcasts recently earned recognition:  the "Problem Solvers" podcast series earned the 2018 Digiday Publishing Award for "Best Use of a Podcast" and the "How Success Happens" podcast series was a finalist in the 2018 Folio Digital Awards.  EM has also been honored as a finalist in two categories in Folio's 2010 Eddie & Ozzie magazine awards, has been named one of the top performing magazines for four years in "Capell's Circulation Report," and has been honored for its content by receipt of the prestigious *Maggie* award in 2008, 2009, 2010, and 2011 from the Western Publishing Association.  EM's website at *entrepreneur.com* has been awarded "Outstanding Achievement in Web Development" by the Web Marketing Association, and its networking website under the ENTREPRENEUR CONNECT Mark was voted the #1 "Top 10 Social Networks for Entrepreneurs" by Mashable.com.  EM has also received multiple

1 Integrated Marketing Awards from MIN for its magazine and website, including

2 being selected as an awards finalist in 2015.

3        31.    In addition, both ENTREPRENEUR® magazine and the

4 *entrepreneur.com* website have been named to BtoB magazine's 2010, 2011, and

5 2012 lists of the top 50 media outlets for business-to-business advertising.  EM's

6 management and staff have also been recognized for their contributions to

7 publishing and the media industry, including such awards and recognitions in 2015

8 as (i) Folio's designation of an EM staff writer as one of the "Top Women in

9 Media," and (ii) Fast Company's recognition on Twitter of EM's Editor-in-Chief

10 as one of the "25 Smartest Women in Media."

11                    **EM's Intellectual Property Rights**

12        32.    EM owns, and has obtained United States federal registrations for, the

13 ENTREPRENEUR Mark, as well as a family of related marks incorporating the

14 term ENTREPRENEUR, as follows:

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 16:  Paper goods and printed matter; namely magazines, books, and published reports pertaining to business opportunities | 1,453,968 August 25, 1987 |
| ENTREPRENEUR | 35:  Advertising and business services, namely, arranging for the promotion of the goods and services of others by means of a global computer network and other computer online services providers; providing business information for the use of customers in the field of starting and operating small businesses and permitting customers to obtain information via a global computer network and other computer online service providers; and web advertising services, namely, providing active links to the websites of others | 2,263,883 July 27, 1999 |
| ENTREPRENEUR | 35:  Arranging and conducting trade show exhibitions in the field of entrepreneurial activities, namely, the start-up and operation of small business enterprises 41:  Educational services, namely, conducting seminars on the development and operation of businesses, and conducting workshops on computer technology, telecommunications, marketing, financing options, real estate management, tax planning, and insurance | 2,502,032 October 30, 2001 |

15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

COMPLAINT
DEMAND FOR JURY TRIAL

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR | 38:  Streaming of video and digital material on the Internet | 4,260,948 December 18, 2012 |
| ENTREPRENEUR | 9:  Downloadable computer software and software for mobile devices for the reproduction, display, and distribution of digitized content | 4,345,424 June 4, 2013 |
| ENTREPRENEUR | 9: Pre-recorded audio and audiovisual recordings of programs concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business, in the form of downloadable recordings 38: Streaming of audiovisual and multimedia content via the internet; transmission and delivery of audiovisual and multimedia content via the internet; video-on-demand transmission services; mobile media services in the nature of electronic transmission, wireless broadcasting and electronic delivery of audio, video and multimedia entertainment content, namely, text, data, images, audio, video, and audiovisual files provided via the internet; video broadcasting services over the internet or other communications network, namely, electronically transmitting video clips; internet broadcasting services; providing streaming of audio and video in the nature of programs concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business, namely, audio, visual, and audiovisual matter for others via global computer networks; broadcasting and transmission of radio, and internet programs; broadcasting of internet programs via radio and television; broadcasting of programs provided over the internet; streaming audio, video, and audiovisual content, data and information on the Internet, communications networks and wireless telecommunications networks; providing video on-demand transmission of audio, video and audiovisual content, data and information; transmission of audio, video and audiovisual content, data and information on the Internet, communications networks and wireless | 5,256,907 August 1, 2017 |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

COMPLAINT
DEMAND FOR JURY TRIAL

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| | telecommunications networks. 41: Entertainment services, namely, the production, presentation, distribution and syndication of on-going television, internet and non-downloadable audio and audiovisual recordings, all of the aforementioned concerning strategies and other how-to information about starting and successfully operating businesses, successful business owners and other information of interest to business owners and members of the general public interested in owning and operating a business | |
| ENTREPRENEUR | 25: Clothing, namely, shirts; fleece pullovers; pullovers; shirts; short-sleeved or long-sleeved t-shirts; short-sleeved shirts; T-shirts; Headgear, namely, hats, caps. | 4,690,619 February 24, 2015 |
| ENTREPRENEUR BOOKSTORE | 35: Online ordering services featuring printed and electronically downloadable publications, namely, books, study guides, concerning advice and information relating to starting and operating a business and other topics concerning and of interest to entrepreneurs, new and existing businesses, and members of the general public | 4,612,937 September 30, 2014 |
| ENTREPRENEUR PRESS | 16:  Paper goods and printed matter, namely, books, manuals, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running, and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses, and members of the general public | 3,470,064 July 22, 2008 |
| Ep Entrepreneur Press | 16:  Paper goods and printed matter, namely, books, manuals, work books, study guides, legal and business forms, and newsletters concerning advice and information relating to the subjects of starting, running and operating a business, and individuals who succeeded in business, which subjects are of interest to entrepreneurs, new and existing businesses, and members of the general public | 3,470,063 July 22, 2008 |
| ENTREPRENEUR'S STARTUPS | 9:  Downloadable computer software and software for mobile devices for the reproduction, display, distribution, and sharing of digitized content; downloadable electronic publications, namely, magazines in the fields of business, finance, sales, marketing, current events, lifestyle issues, and developments in science and technology | 4,532,577 May 20, 2014 |

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| ENTREPRENEUR'S STARTUPS | 16:  Paper goods and printed matter; namely, magazines pertaining to business opportunities | 3,204,899 February 6, 2007 |
| ENTREPRENEUR VOICES | 9: Downloadable digital books in the nature of e-books, namely, a downloadable series of non-fiction e-books featuring the unique voices of thought leaders, topic experts, small business owners and entrepreneurs, who share their definitive and unique perspectives on various hot and trending topics of interest to entrepreneurs, new and existing business owners and members of the general public, including inspirational stories and timeless advice 16: Paper goods and printed matter, namely, a series of non-fiction books featuring the unique voices of thought leaders, topic experts, small business owners and entrepreneurs,  who share their definitive and unique perspectives on various hot and trending topics of interest to entrepreneurs,  new and existing business owners and members of the general public, and inspirational stories and timeless advice | 5,854,545 September 10, 2019 |

33.    The above marks are collectively referred to as the "EM Marks."  The above registrations are collectively referred to as the "EM Registrations."

34.    EM's five U.S. registrations for the ENTREPRENEUR Mark (Nos. 1,453,968; 2,263,883; 2,502,032; 4,260,948; 4,345,424; 4,690,619) and several other of the foregoing registrations are also incontestable pursuant to 15 U.S.C. § 1065, which constitutes conclusive evidence of the registrations' validity, as well as EM's entitlement to the exclusive use of the marks in commerce throughout the United States on the goods and services listed in the registrations.

35.    Further, the EM Registrations constitute prima facie evidence that the EM Marks are valid, and that EM is entitled to the exclusive use of the EM Marks in commerce throughout the United States on the goods and services listed in the registrations.

36.    EM, and its predecessors in interest, have been and are now engaged in the business of developing, creating, distributing, marketing, advertising, and

1    selling a wide variety of goods and services under the EM Marks, and in particular

2    under the ENTREPRENEUR Mark.  In fact, EM has used the ENTREPRENEUR

3    Mark in commerce for over forty years, having first adopted that mark for

4    magazines at least as early as May 2, 1978, which is famous, well-known, and

5    recognized as identifying goods and services that originate from EM.

6        37.    Through careful cultivation of its goods and services provided under

7    the EM Marks, and in particular the ENTREPRENEUR Mark, EM has developed

8    an outstanding reputation as an innovator in the field of business start-ups and

9    strategy and has established an extremely loyal customer following.  Through

10   EM's widespread and continuous use of its family of EM Marks, these marks have

11   acquired extensive goodwill, developed a high degree of distinctiveness, and

12   become well-known and recognized as identifying goods and services that

13   originate from EM.

14       38.    Numerous courts across the country have recognized the strength of

15   the EM Marks, including[1]:

16       i.    The U.S. District Court for the Central District of California held that

17            "[t]he extensive advertising and public recognition over the past 25

18            years have established [the ENTREPRENEUR® Mark] as a strong

19            mark in the industry"; the ENTREPRENEUR® Mark "is a strong

20            distinctive mark, deserving of significant protection"; and the

21            ENTREPRENEUR Mark "has acquired secondary meaning."

22            *Entrepreneur Media, Inc. v. Smith*, No. 98-3607, 2004 U.S. Dist.

23            Lexis 24078, *9–10, 13 (C.D. Cal. June 23, 2004).

24       ii.   The Ninth Circuit reviewed the District Court's findings and affirmed

25            them on appeal.  *Entrepreneur Media, Inc. v. Smith*, 101 Fed. App'x

26            212, 215 (9th Cir. 2004).

27

28   _____
     [1] Some of the cases cited mention "Entrepreneur Media, Inc." or "EMI."  These
     refer to EM, as EM was previously known as Entrepreneur Media, Inc.

iii. The U.S. District Court for the Central District of California in a later case adopted the holding of the district court in the Smith case, and once again found that "the mark ENTREPRENEUR is strong distinctive mark, deserving of significant protection" and that "EMI's ENTREPRENEUR mark is a strong mark" that was infringed by defendant's ENTREPRENEUR PODCAST mark. *See Entrepreneur Media, Inc. v. Eric M. Dye, et al.*, No. 18-cv-0341-DOC (PLAx), Docket No. 22 (C.D. Cal., Sept. 11, 2018).

iv. The U.S. District Court for the Central District of California recently held that "the EMI Marks, including the ENTREPRENEUR® mark, have acquired extensive goodwill, developed a high degree of distinctiveness, and become famous, well known, and recognized as identifying goods and services that originate from EMI such that they are deserving of strong protection." *See Entrepreneur Media, Inc. v. Alfonso*, No. 8:21-cv-00644-DOC-(JDEx), 2021 U.S. Dist. LEXIS 130502, at *15 (C.D. Cal. July 12, 2021) (also finding that EM's rights were violated by the ENTREPRENEUR AFFILIATES MASTERY and ENTREPRENEUR AFFILIATES marks).

v. The U.S. District Court for the Central District of California has also twice held that "the ENTREPRENEUR Mark and EMI's related marks have developed a high degree of distinctiveness and become well-known and recognized as identifying goods and services that originate from EMI." *Entrepreneur Media, Inc. v. Entrepreneurs Opportunities, LLC*, No. 17-cv-01341-JVS-KES, Docket No. 20 (C.D. Cal., Jan. 14, 2018); *Entrepreneur Media, Inc. v. The Innovation Initiative, et al*, No. 17-cv-2261-JVS-KES, Docket No. 23 (C.D. Cal., August 2, 2018) (finding the same); *see also Entrepreneur Media, Inc. v. Darren Casey*, No. 18-cv-01058-JLS-AGR, Docket No. 20 (C.D.

1    Cal., December 20, 2018) (recognizing that EM's marks are

2    protectable and have been used for over forty years); *Entrepreneur*

3    *Media, Inc. v. John Doe d/b/a/ Entrepreneur Press*, No. 19-cv-01706-

4    JLS-JDE, Docket No. 23 (C.D. Cal., October 21, 2020) (recognizing

5    the same).  These courts also held that EM's rights were violated by,

6    respectively, the ENTREPRENEUR OPPORTUNITIES mark, the

7    ENTREPRENEUR TV mark, the FIT ENTREPRENEUR

8    MAGAZINE mark, and the ENTREPRENEUR PRESS mark.

9    vi.   The U.S. District Court for the District of Colorado held that "the EMI

10          Marks, and in particular the ENTREPRENEUR® mark, have acquired

11          extensive goodwill, developed a high degree of distinctiveness and

12          secondary meaning, and become well known, famous, and recognized

13          as identifying goods and services that originate from EMI, such that

14          they are deserving of strong protection."  *Entrepreneur Media, Inc. v.*

15          *Spencer et al.*, No. 1:17-cv-01637-RBJ, Docket No. 20, at pg. 8 (D.

16          Colo. Dec. 15, 2017) (also finding that EM's rights were violated by

17          the ENTREPRENEUR SUPPORT mark).

18   vii.  The U.S. District Court for the District of Connecticut has recognized

19          that "the EMI Marks, and in particular the ENTREPRENEUR Mark,

20          have acquired extensive goodwill, developed a high degree of

21          distinctiveness and secondary meaning, and become well known and

22          recognized as identifying goods and services that originate from EMI,

23          such that they are deserving of strong protection."  *Entrepreneur*

24          *Media, Inc. v. Whitehill et al.*, No. 13-cv-01819(MPS), Docket No. 19

25          (D. Conn. Aug. 19, 2015) (also finding that EM's rights were violated

26          by the ENTREPRENEUR WEEK mark).

27   viii. The U.S. District Court for the District of Maryland has twice

28          recognized the EM Marks as valid, strong, and distinctive.

1   *Entrepreneur Media, Inc. v. JMD Entertainment Group, LLC, et al.*,
2   No. RDB-12-1970, Docket No. 30 (D. Md. July 23, 2013); *id.*, Docket
3   No. 47 (Apr. 7, 2014) (also finding that EM's rights were violated by
4   the ENTREPRENEURS EDGE mark).

5   ix.   Both a Magistrate Judge and District Court Judge in the Eastern
6        District of Virginia found the ENTREPRENEUR Mark to be
7        distinctive. *Entrepreneur Media, Inc. v. seattleentrepreneur.com*,
8        No. 11-00409, Docket No. 22 (E.D. Va. Dec. 6, 2011) (also finding
9        that EM's rights were violated by the registration of the
10       *seattleentrepreneur.com* and *austinentrepreneur.com* domain names).

11   **Defendants' Infringing Mark**

12   39.   Defendants own the *joinef.com* domain name and operate a website at
13   this domain using the ENTREPRENEUR FIRST mark.  Previously, the
14   ENTREPRENEUR FIRST mark was used in connection with a stylized
15   "door key" logo that was made of up a lowercase "e" and "f," as shown below:

16   

22   40.   However, in or around September 2023, Defendants engaged in a
23   rebranding campaign.  On information and belief, Defendants rebranded their mark
24   for the sole purpose of making it look even more similar to EM's
25   ENTREPRENEUR Mark and to create more consumer confusion in the
26   marketplace—all to the detriment of EM and to the benefit of Defendants.

27
28

41.     As part of their rebranding campaign, Defendants removed the "door key" logo and made the "entrepreneur" term portion of their mark significantly larger to put emphasis on this term, as shown below:



(*www.joinef.com*)

42.     This rebrand was not a mere coincidence.  Indeed, prior to this rebrand, the parties had an ongoing trademark dispute in the U.S. Patent and Trademark Office's ("USPTO") Trademark Trial and Appeal Board ("TTAB") regarding Defendants' ENTREPRENEUR FIRST mark.  In that dispute, Defendants were put on notice of EM's rights to the EM Marks, as well as the fact that EM had priority.  Moreover, prior to the rebrand, EM had continually expressed its concern with Defendants' use of the ENTREPRENEUR FIRST mark, and the parties had many settlement discussions to discuss those concerns.

43.     Despite seeming to engage in good faith negotiations with EM about these issues in an effort to amicably settle the dispute, this rebrand now makes clear that Defendants actually engaged in those discussions in bad faith, as they had no intent whatsoever to change their mark.  Despite having full knowledge

about EM's trademark rights, Defendants moved forward at full speed and modified their mark to create even more consumer confusion in the marketplace.

44.     Under the ENTREPRENEUR FIRST mark, Defendants provide a broad range of goods and services, including business education products and services for startups and individuals who are interested in starting or developing a company.  For instance, Defendants offer a program that teaches business practices surrounding founding a company and provides various resources, as shown below:



(*www.joinef.com/program/core*)

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

COMPLAINT
DEMAND FOR JURY TRIAL

45.     Defendants also publish blog posts on their *joinef.com* website.  These blog posts provide various resources and business-related advice for individuals seeking to start or develop a company, as shown below:



*(www.joinef.com/posts)*

46.     Moreover, Defendants use the ENTREPRENEUR FIRST mark to offer a podcast that provides, among other things, advice to individuals who want to start or develop a business (as shown below).  This podcast is available on several podcast platforms including, but not limited to, Apple Podcasts.



*(https://podcasts.apple.com/us/podcast/the-founders-mindset/id1613937514)*

47.    Defendants advertise their goods and services under the ENTREPRENEUR FIRST mark on various social media platforms, including, but not limited to, Instagram, Facebook, and Twitter (the "Infringing Social Media Accounts"), as shown in the below examples:



*(www.instagram.com/join_ef)*

COMPLAINT
DEMAND FOR JURY TRIAL

LATHAM & WATKINS LLP
ATTORNEYS AT LAW



*(www.facebook.com/joinef)*



*(www.twitter.com/join_ef)*

48.  Defendants filed a trademark application (Serial No. 79/254294) with the USPTO to register the ENTREPRENEUR FIRST mark for use with the following goods and services: "*Business management advisory and consultancy services; business management and business consultancy services for new start-up companies; business introductory services in the nature of business networking; business intermediary services relating to introducing potential private investors to entrepreneurs who require funding; business profit analysis; business advice*

*relating to financial re-organisation; business advisory services relating to product development; business advice relating to strategic marketing; business talent recruitment agency services; personnel consultancy services for business talent identification services; business talent identification and recruitment advisory services*" in Class 35; "*Financial services, namely, financial planning for businesses; arranging finance for businesses; providing financing to emerging and start-up companies; venture capital funding services to emerging and start-up companies; financial investment advisory services*" in Class 36; "*Educational and training services, namely, seminars and workshops in the field of creating and growing businesses; business training services; education and training services, namely, seminars and workshops and training in relation to business management; organising conferences and workshops in the field of creating, growing and managing all aspects of start up and small businesses, for training purposes; coaching and mentoring services relating to entrepreneurial development for small business owners*" in Class 41; and "*Technical advisory services relating to analyzing the strengths and weaknesses of new technology and technological solutions for the purpose of assisting entrepreneurs in establishing new businesses; advisory services relating to computer software; provision of expert evaluations relating to computing and information technology products design and development; analysis and evaluation of product development*" in Class 42.

49.     EM opposed Defendants' trademark application for the ENTREPRENEUR FIRST mark (Opp. No. 91267334), and this action remains pending before the TTAB.

50.     In light of EM's renown, online presence, and long history of providing goods and services under the EM Marks, EM is very concerned that consumers will likely be confused and mistakenly believe that Defendants and their goods and/or services are endorsed, approved, or sponsored by, or affiliated, connected, or associated with, EM.

51.   Defendants will thus reap the benefits of EM's reputation and goodwill based on this consumer confusion, to EM's detriment.

52.   EM attempted to reconcile its concerns with Defendants, including by a letter, various follow-up correspondence, and by opposing Defendants' trademark application.  While the parties have been engaged in good faith negotiations and have explored numerous potential options for resolving their differences, Defendants recently rebranded in a manner designed to trade off EM's goodwill and confuse consumers and ultimately refused to cease use of the Infringing Mark.

53.   Given Defendants' actions and continuing use of the Infringing Mark, EM brought this suit to fully litigate and resolve the trademark issues between the parties.

### EM Is Harmed By Defendants' Continuing Infringement & Unlawful Conduct

54.   Defendants' continued use of the confusingly similar Infringing Mark in commerce violates EM's valuable intellectual property rights in the EM Marks and EM Registrations, and Defendants' knowing, intentional, willful, and malicious use of its marks is damaging to EM and EM's property.

55.   Defendants have used the Infringing Mark to unfairly usurp and capitalize on the value and goodwill of the EM Marks and the EM Registrations, particularly the ENTREPRENEUR Mark.  Defendants are aware of EM's strong trademark rights and reputation in the marketplace, but nevertheless, use the Infringing Mark to profit from the goodwill associated with the EM Marks and EM Registrations.

56.   Defendants have intentionally and knowingly capitalized off of confusion between the EM Marks, particularly the ENTREPRENEUR Mark, and the ENTREPRENEUR FIRST mark, including by providing content almost identical to EM's content, as described above.

57.     Due to Defendants' continuing willful infringement and unlawful conduct, EM is now forced to bring this Complaint to protect its valuable and longstanding intellectual property rights.  EM had to retain counsel and incur substantial fees and costs (and it continues to incur those fees and costs) to prosecute this suit and pursue its claims.

58.     EM's interest in protecting its intellectual property rights and its products and services from consumer confusion outweigh any harm to Defendants. The public interest is best served by granting EM's requested relief against Defendants.

## FIRST CLAIM FOR RELIEF

### Federal Trademark Infringement – 15 U.S.C. § 1114

59.     EM incorporates by reference the factual allegations set forth above.

60.     EM owns the EM Marks and the EM Registrations.  The trademarks reflected in the EM Registrations are strong and distinctive and designate EM as the source of all products and services advertised, marketed, sold, or used in connection with the EM Marks.  In particular, the ENTREPRENEUR Mark has been used for over forty years and has been recognized by federal courts as a strong and distinctive mark.

61.     EM is the senior user of the EM Marks as it began use of those marks in interstate commerce prior to Defendants' first use of the confusingly similar Infringing Mark.

62.     Defendants do not have authorization, license, or permission from EM to market and sell their products and services under the Infringing Mark, which are confusingly similar to the EM Marks, including the ENTREPRENEUR Mark, and which are used by Defendants with products and services that are identical and/or closely related to the particular products and services associated with the EM Marks, particularly the ENTREPRENEUR Mark.

63.     Defendants were aware of the EM Marks, particularly the ENTREPRENEUR Mark, as Defendants were on constructive notice based on EM's longstanding federal registrations, as well as on actual notice based on EM's numerous communications with Defendants about this matter.  Yet, Defendants continued to use their Infringing Mark.  Thus, Defendants' unauthorized use of the confusingly similar Infringing Mark was and is knowing, intentional, and willful.

64.     As a direct and proximate result of Defendants' wrongful conduct, EM has been and will continue to be damaged.

65.     Defendants' actions therefore constitute trademark infringement.

66.     Unless an injunction is issued enjoining any continuing or future use of the confusingly similar Infringing Mark by Defendants, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation, or sponsorship, and will thereby irreparably harm EM.

67.     Defendants' activities have caused and will continue to cause irreparable harm to EM, for which it has no adequate remedy at law, because: (i) the EM Marks, and in particular the ENTREPRENEUR Mark, comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with EM's goodwill and customer relationships and is harming and will continue to substantially harm EM's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to EM, are continuing.  Accordingly, EM is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

68.     Pursuant to 15 U.S.C. §1117(a), EM is entitled to an order: (i) requiring Defendants to account to EM for any and all profits derived from its infringing actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by EM that were caused by Defendants' conduct.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW

69.     Defendants' conduct was and is intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), EM is therefore entitled to an award of treble damages against Defendants.

70.     Defendants' acts make this an exceptional case under 15 U.S.C. § 1117(a); thus EM is entitled to an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Federal Unfair Competition/False Designation of Origin – 15 U.S.C. § 1125(a)

71.     EM incorporates by reference the factual allegations set forth above.

72.     The EM Marks, and in particular the ENTREPRENEUR Mark, are strong and distinctive and designate EM as the source of all goods and services advertised, marketed, sold, or used in connection with those marks.  In addition, by virtue of EM's decades of use of the ENTREPRENEUR Mark in connection with its products and services, and its extensive marketing, advertising, promotion, and sale of its products and services under that mark and the EM Marks, the EM Marks, including in particular the ENTREPRENEUR Mark, have acquired secondary meaning, whereby the consuming public of this District, the State of California, and the United States associate the EM Marks with a single source of products and services.

73.     EM is the senior user of the EM Marks as it began use of those marks in interstate commerce prior to Defendants' first use of the confusingly similar Infringing Mark.

74.     Defendants were aware of the EM Marks, and in particular the ENTREPRENEUR Mark, because Defendants were on constructive notice based on EM's longstanding federal registrations, as well as on actual notice based on EM's numerous communications with Defendants about this matter.  Yet, Defendants continued to use their Infringing Mark.  Thus, Defendants' unauthorized use of the confusingly similar Infringing Mark was and is knowing, intentional, and willful.

75.     Through their use of the confusingly similar Infringing Mark, Defendants intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that EM somehow authorized, originated, sponsored, approved, licensed, or participated in Defendants' use of the confusingly similar Infringing Mark.

76.     In fact, there is no connection, association, or licensing relationship between EM and Defendants, nor has EM ever authorized, licensed, or given permission to Defendants to use the confusingly similar Infringing Mark in any manner.

77.     Defendants' use of the confusingly similar Infringing Mark will likely cause confusion as to the origin and authenticity of Defendants' website, and related goods and services, and will likely cause others to believe that there is a relationship between Defendants and EM when there is, in fact, not.

78.     As a direct and proximate result of Defendants' wrongful conduct, EM has been and will continue to be damaged.

79.     Defendants' actions thus constitute false designation of origin and unfair competition.

80.     Defendants' activities have caused, and will continue to cause, irreparable harm to EM, for which it has no adequate remedy at law, in that: (i) the EM Marks, including the ENTREPRENEUR Mark, comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendants' infringement constitutes interference with EM's goodwill and customer relationships and will substantially harm EM's reputation as a source of high-quality goods and services; and (iii) Defendants' wrongful conduct, and the damages resulting to EM, are continuing.  Accordingly, EM is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

81.     Pursuant to 15 U.S.C. §1117(a), EM is entitled to an order: (i) requiring Defendants to account to EM for any and all profits derived from its

1  actions, to be increased in accordance with the applicable provisions of law; and

2  (ii) awarding all damages sustained by EM that were caused by Defendants'

3  conduct.

4       82.    Defendants' conduct was and is intentional and without foundation in

5  law, and pursuant to 15 U.S.C. § 1117(a), EM is therefore entitled to an award of

6  treble damages against Defendants.

7       83.    Defendants' acts make this an exceptional case under 15 U.S.C.

8  § 1117(a); thus EM is entitled to an award of attorneys' fees and costs.

9                          **THIRD CLAIM FOR RELIEF**

10                    **Common Law Trademark Infringement**

11      84.    EM incorporates by reference the factual allegations set forth above.

12      85.    EM has valid and protectable common law rights in the EM Marks.

13      86.    EM is the senior user of the EM Marks.

14      87.    Defendants' conduct constitutes infringement of EM's common law

15  rights in the EM Marks.

16      88.    Defendants' use of the confusingly similar Infringing Mark on

17  unauthorized goods and services is likely to cause confusion as to the origin of

18  Defendants' goods and services and is likely to cause others to believe that there is

19  a relationship between Defendants and EM.

20      89.    Defendants' wrongful acts have permitted and will permit them to

21  receive substantial profits based on the strength of EM's reputation and the

22  substantial goodwill it has built up in the EM Marks.

23      90.    As a direct and proximate result of Defendants' wrongful conduct,

24  EM has been and will continue to be damaged.

25      91.    Unless an injunction is issued enjoining any continuing or future use

26  of the Infringing Mark by Defendants, such continuing or future use is likely to

27  continue to cause confusion and thereby irreparably damage EM.  EM has no

28  adequate remedy at law.  Accordingly, EM is entitled to an injunction.

## FOURTH CLAIM FOR RELIEF

### Common Law Unfair Competition

92.  EM incorporates by reference the factual allegations set forth above.

93.  EM has expended significant time and expense in developing the EM Marks and the high-quality products and services it markets and sells under those marks.  The EM Marks have been very successful and have developed a substantial reputation and goodwill in the marketplace.

94.  Through their wrongful conduct, Defendants have misappropriated EM's efforts and are exploiting the EM Marks, and EM's reputation to market and sell their goods and services under the Infringing Mark.  These actions constitute unfair competition.

95.  As a direct and proximate result of Defendants' wrongful conduct, EM has been and will continue to be damaged.

96.  Unless an injunction is issued enjoining Defendants' unfairly competitive conduct, EM will continue to be damaged irreparably.  EM has no adequate remedy at law.  Accordingly, EM is entitled to an injunction.

97.  Defendants have acted willfully, intentionally and maliciously, such that EM is entitled to punitive damages.

### PRAYER

WHEREFORE, EM prays for the following relief:

A.  An injunction ordering Defendants, and their officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them (collectively, the "Enjoined Parties"), who receive actual notice of the injunction order by personal or other service, to:

i.  cease all use and never use the ENTREPRENEUR FIRST mark, the EM Marks, or any other mark likely to cause confusion with the EM Marks, including any misspelling or variation of those Marks, in, on, or with any products or

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

services, or in connection with the, advertising, marketing, or other promotion, distribution, offering for sale, or sale, of any products or services, including on the Infringing Social Media Accounts;

ii. never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, sold or otherwise distributed by the Enjoined Parties is in any manner associated or connected with EM, or are licensed, approved, or authorized in any way by EM;

iii. never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that the Enjoined Parties, or any of their products or services, are related to, or authorized or sponsored by, EM;

iv. never register any domain name that contains any of the EM Marks or any misspelling or variation of those Marks, or any domain name confusingly similar to any of the EM Marks;

v. transfer to EM all domain names in the Enjoined Parties' possession, custody, or control that include the word "entrepreneur" or any misspelling or variation thereof, are otherwise confusingly similar to or contain any of the EM Marks, or were used in connection with the Infringing Mark, including but not limited to *www.joinef.com.*

vi. cease all use of the Infringing Social Media Accounts and any similar accounts or social media websites, and never register or attempt to register any social media account that contains the

ENTREPRENEUR FIRST mark, any of the EM Marks, or any misspelling or variation of those Marks, or any other social media account confusingly similar to any of the EM Marks;

vii.   transfer to EM, disable, or delete the Infringing Social Media Accounts that were used to promote the ENTREPRENEUR FIRST mark, including all such accounts in Defendants' possession, custody, or control that include the word "entrepreneur" or any misspelling or variation thereof, or are otherwise confusingly similar to or contain any of the EM Marks;

viii.   never unfairly compete with EM in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that relate in any way to the production, distribution, marketing, and/or sale of products and services bearing any of the EM Marks or any other mark likely to cause confusion with the EM Marks, including any misspelling or variation of those Marks; and

ix.   never apply for or seek to register the ENTREPRENEUR FIRST mark, any of the EM Marks, or any other mark likely to cause confusion with the EM Marks, including any misspelling or variation of those Marks.

B.   An order, pursuant to 15 U.S.C. § 1118, requiring the Enjoined Parties to deliver and destroy within thirty days all prints, advertising, packaging, goods, and other materials bearing the Infringing Mark.

C.   An order pursuant to 15 U.S.C. § 1116(a), directing the Enjoined Parties to file with the Court and serve on EM's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth

1   in detail the manner and form in which the Enjoined Parties have complied with

2   the injunction.

3       D.      To give practical effect to the Court's injunction, an order that the

4   social networking service or entity (e.g., Facebook) related to any of the social

5   media accounts subject to this Order must, within fourteen (14) days of receipt of

6   the Order, transfer, disable, or otherwise cancel those subject accounts at EM's

7   request if the Enjoined Parties have not already done so.

8       E.      To give practical effect to the Court's injunction, an order that the

9   Registry or Registrar for any of the foregoing domain names must, within fourteen

10  (14) days of receipt of the Order, transfer or otherwise assign those subject domain

11  names to EM if the Enjoined Parties have not already done so.

12      F.      An order finding that, by the acts complained of above, Defendants

13  have infringed EM's federally-registered trademarks in violation of 15 U.S.C.

14  § 1114.

15      G.      An order finding that, by the acts complained of above, Defendants

16  have created a false designation of origin and false representation of association in

17  violation of 15 U.S.C. § 1125(a).

18      H.      An order finding that, by the acts complained of above, Defendants

19  have engaged in common law trademark infringement.

20      I.      An order finding that, by the acts complained of above, Defendants

21  have engaged in common law unfair competition.

22      J.      An order awarding EM damages as follows:

23          i.      Pursuant to 15 U.S.C. § 1117(a), EM's actual damages, as well

24                  as all of Defendants' profits or gains of any kind from its acts of

25                  trademark infringement, false designation of origin, and unfair

26                  competition, including a trebling of those damages; and

27          ii.     Punitive damages pursuant to California common law.

28

1       K.     An order pursuant to 15 U.S.C. § 1117(a), finding that this is an

2 exceptional case and awarding EM its reasonable attorneys' fees.

3       L.     An order pursuant to 15 U.S.C. § 1117(a), awarding EM all of its

4 costs, disbursements, and other expenses incurred due to Defendants' unlawful

5 conduct.

6       M.    An order awarding EM pre-judgment interest.

7       N.     An order awarding EM such other relief as the Court deems

8 appropriate.

## JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

Dated:  April 4, 2024              Respectfully submitted,

                                 LATHAM & WATKINS LLP

                                 By: */s/ Perry J. Viscounty*
                                     Perry J. Viscounty

                               *Attorneys for Plaintiff*
                                   ENTREPRENEUR MEDIA, LLC